FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

SEP 2 7 2002

BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:98-00038 |
| v. | ) | (Senior Judge Nixon) |
| | ) | |
| | ) | 18 U.S.C. § 2 |
| EBEN PAYNE | ) | 18 U.S.C. § 36 |
| a/k/a "BONE" | ) | 18 U.S.C. § 922(j) |
| a/k/a "Q-BONE" | ) | 18 U.S.C. § 924(a)(2) |
| JAMAL SHAKIR | ) | 18 U.S.C. § 924(c)(1) |
| a/k/a "DONUT" | ) | 18 U.S.C. § 924(o) |
| a/k/a "NUT" | ) | 18 U.S.C. § 924(j) |
| a/k/a "BIG SCREWLOOSE" | ) | 18 U.S.C. § 982 |
| PACIA SHAKIR | ) | 18 U.S.C. § 1503 |
| a/k/a "PESO" | ) | 18 U.S.C. § 1512(a)(1) |
| DONNELL YOUNG | ) | 18 U.S.C. § 1512(b)(3) |
| a/k/a "LIL' PESO" | ) | 18 U.S.C. § 1951 |
| DERRICK EATMON | ) | 18 U.S.C. § 1952 |
| a/k/a "CHIP" | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | ) | 18 U.S.C. § 1956(h) |
| | ) | 21 U.S.C. § 841(a)(1) |
| | ) | 21 U.S.C. § 846 |
| | ) | 21 U.S.C. § 848 |
| | ) | 21 U.S.C. § 848(e)(1)(A) |
| | ) | 21 U.S.C. § 853 |
| | ) | 21 U.S.C. § 861 |
| | ) | 18 U.S.C. § 3591 |
| | ) | 18 U.S.C. § 3592 |

## FIFTH SUPERSEDING INDICTMENT

The Grand Jury charges:

### BACKGROUND AND OPERATION OF THE CRIMINAL ORGANIZATION

At times material to Counts One through Forty-five of this Indictment:

1

1.   JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG
SCREWLOOSE" led, organized, and administered a faction of the
Rollin' 90s Crips, a Los Angeles based street gang.  The faction
was referred to by names including the Rollin' 90s Neighborhood
Crips and the Bangside 90s.  The term "Shakir Enterprise," as
used in this Indictment, refers to the faction led, organized,
and administered by JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a
"BIG SCREWLOOSE," along with all of the faction's co-conspirators
and aiders and abettors, whether or not those people were actual
members of the Rollin' 90s Crips.  The term "members of the
Shakir Enterprise," as used in this Indictment, refers to all
participants in the Shakir Enterprise, including JAMAL SHAKIR
a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and all co-
conspirators and aiders and abettors.

2.   The Shakir Enterprise constituted a continuing criminal
enterprise as charged in Count One, a drug trafficking conspiracy
as charged in Count Two, a conspiracy to use and carry firearms
in drug trafficking and violent felonies as charged in Count
Three, and a money laundering conspiracy as charged in Count
Four.

3.   The goals and purposes of the Shakir Enterprise were as
follows:

2

a. Acquiring financial and material gain for the members of the Shakir Enterprise through the distribution of controlled substances, and

b. Maintaining, protecting, and expanding the Shakir Enterprise, including avoiding prosecution of the members of the Shakir Enterprise.

4. The Shakir Enterprise included the following people as well as other persons both known and unknown to the Grand Jury:

a. Living: JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," PACIA SHAKIR a/k/a "PESO," DONNELL YOUNG a/k/a "LIL' PESO," DERRICK EATMON a/k/a "CHIP," Lameisha Anderson a/k/a "Geep-Geep," Joseph Hamlin a/k/a "J-Stone," Richard Kessee a/k/a "Double R," Janice Kittrell a/k/a "Henny Loc," Alfonso Lewis a/k/a "Tiny Donut," Lamont McLemore a/k/a "Ice," Rennard Moore a/k/a "Chico," Langston Patterson, Toni Tulloch, Charles Williams, and Milton Williams.

b. Deceased: Richard Chambers, Torrance Cook a/k/a "Disco," Solomon Harris a/k/a "Solly," Sharon Duran, Anthony Rogers a/k/a "Handyman," Shannon Walker, Kenard Murry a/k/a "Coo-Coo", Regina Suetopka, Barney Moten, Woody Pilcher a/k/a "Screwloose," and Wallace Davis a/k/a "Kaos."

5. Members of the Shakir Enterprise used the following means and methods, among others, in furtherance of the goals and

3

purposes of the Shakir Enterprise. These actions were known and reasonably foreseeable to each of the defendants.

      a. They possessed, transported, and distributed controlled substances, including cocaine, cocaine base (commonly called "crack cocaine"), marihuana, and heroin.

      b. They collected, possessed, transferred, and concealed drug proceeds.

      c. They possessed, shared, carried, and used firearms, including silenced weapons, semiautomatic assault weapons, and fully automatic weapons.

      d. They committed violent acts, including assault, abduction, robbery, and murder.

      e. They used juveniles under eighteen years of age.

      f. They acquired and used unauthorized communication devices such as "cloned" telephones.

      g. They acquired and used false identification documents and alias names to transfer drug proceeds, to facilitate travel, to obtain lodging and real estate, and to hide their true identities from law enforcement.

    6. The Shakir Enterprise operated in various communities including Nashville, Tennessee, Memphis, Tennessee, Oklahoma City, Oklahoma, and Los Angeles, California.

4

## COUNT ONE
## (CONTINUING CRIMINAL ENTERPRISE)

The Grand Jury further charges:

1.    Between in or around 1994 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did engage in a continuing criminal enterprise, in that:

a.    JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" distributed and possessed, with intent to distribute, controlled substances in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2, and combined, conspired, confederated, and agreed with other persons to do so, in violation of Title 21, United States Code, Section 846, each of which is punishable as a  felony;

b. The above violations were committed as part of a continuing series of violations of Title 21, United States Code, Sections 841 et. seq., which include violations of Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 848(e)(1)(A), 854, and 861.

c.    The above continuing violations were undertaken by JAMAL  SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" in concert with five or more other persons, with respect to whom

5

, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" occupied a position of organizer, a supervisory position, and any other position of management, and

        d.   JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" obtained substantial income and resources from the above continuing violations.

        2.   Furthermore,

        a.   JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" engaged in the above continuing criminal enterprise and was either the principal administrator, organizer and leader of the enterprise, or was one of several such principal administrators, organizers and leaders of the enterprise, and

        b.   The violation committed by JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" involved at least 150 kilograms of a mixture or substance containing cocaine and 1500 grams (one and a half kilograms) of a mixture or substance containing cocaine base, commonly called "crack cocaine," Schedule II controlled substances.

    All in violation of Title 21, United States Code, Section 848 and Title 18, United States Code, Section 2.

COUNT TWO
(DRUG CONSPIRACY)

    The Grand Jury further charges:

    Between in or around 1993 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the

6

defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," PACIA SHAKIR a/k/a "PESO," DONNELL YOUNG a/k/a "LIL' PESO," and DERRICK EATMON a/k/a "CHIP," did combine, conspire, confederate, and agree with each other and with diverse other persons who are to the Grand Jury known and unknown, to knowingly and intentionally distribute controlled substances, including five kilograms or more of a mixture or substance containing cocaine and fifty grams or more of a mixture or substance containing cocaine base ("crack cocaine"), Schedule II controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), punishable under Title 21, United States Code, Section 841(b)(1)(A), and to intentionally kill and cause the intentional killing of one or more persons in furtherance of a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(e)(1)(A).

In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

COUNT THREE
(CONSPIRACY TO USE/CARRY FIREARMS IN DRUG/VIOLENT FELONIES)

The Grand Jury further charges:

Between in or around 1993 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG

7

SCREWLOOSE," PACIA SHAKIR a/k/a "PESO," EBEN PAYNE a/k/a "BONE"
a/k/a "Q-BONE," DONNELL YOUNG a/k/a "LIL' PESO," and DERRICK
EATMON a/k/a "CHIP," did combine, conspire, confederate, and
agree with each other and with diverse other persons who are to
the Grand Jury known and unknown to knowingly use and carry
firearms, including semiautomatic assault weapons, machineguns,
and firearms equipped with firearm silencers and firearm
mufflers, during and in relation to drug trafficking crimes and
crimes of violence for which the defendants may be prosecuted in
a court of the United States, such as conspiracy to distribute
controlled substances in violation of Title 21, United States
Code, Section 846, possession of controlled substances with
intent to distribute and distribution of controlled substances in
violation of Title 21, United States Code, Section 841(a)(1),
intentional killing in furtherance of a continuing criminal
enterprise in violation of Title 21, United States Code, Section
848(e)(1)(A), use of minors in drug trafficking in violation of
Title 21, United States Code, Section 861, tampering with
witnesses and informants in violation of Title 18, United States
Code, Section 1512, and robberies affecting interstate commerce,
in violation of Title 18, United States Code, Section 1951.

In furtherance of the conspiracy and to accomplish the
objects thereof, one or more of the co-conspirators committed or

8

caused the commission of one or more of the following overt acts, among others:

1. Various defendants and their co-conspirators purchased, stole, and shared firearms, and traded controlled substances for firearms.

2. Various defendants and their co-conspirators used and carried firearms to obtain controlled substances, to protect drug-related assets, to collect drug debts, and to assault, abduct, and kill other persons.

3. On or about August 29, 1994, Torrance Cook a/k/a "Disco," while accompanied by DERRICK EATMON a/k/a "CHIP," used a firearm to shoot and kill Richard Chambers in or around Cheatham County, Tennessee.

4. On or about May 22, 1995, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by others, used and carried a firearm in Nashville, Tennessee.

5. On or about September 29, 1995, Kenard Murry a/k/a "Coo-Coo," aided and abetted by JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," used a firearm equipped with a firearm silencer to shoot and kill Solomon Harris a/k/a "Solly" in or around Los Angeles, California.

6. In or around November 1995, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by Rennard Moore a/k/a "Chico," Lameisha Anderson a/k/a "Geep-Geep," and

9

, others used a firearm during an armed robbery of a drug supplier in or around Inglewood, California.

7. On or about April 14, 1996, DONNELL YOUNG a/k/a "LIL' PESO," aided and abetted by Alfonso Lewis a/k/a "Tiny Donut," used and carried a firearm while he assaulted and tortured "Little Vulture" in Oklahoma City, Oklahoma.

8. On or about July 16, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm while abducting Shanese Harding in or around Los Angeles, California.

9. On or about July 20, 1996, Woody Pilcher a/k/a "Screwloose," aided and abetted by JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," Alfonso Lewis a/k/a "Tiny Donut," and other co-conspirators, used a firearm to shoot and kill Anthony Rogers a/k/a "Handyman" in Oklahoma City, Oklahoma.

10. On or about July 29, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm while abducting Philip Martin in or around Los Angeles, California.

11. On or about August 19, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm while transporting a juvenile co-conspirator and cash in or around Los Angeles, California.

12. Between in and around August 1996 and in or around December 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by Lameisha Anderson a/k/a "Geep-

10

Geep," used and carried a firearm while threatening, assaulting, and taking a vehicle from Janice Kittrell a/k/a "Henny Loc" in or around Los Angeles, California.

13. On or about November 8, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and Kenard Murry a/k/a "Coo-Coo" used and carried firearms while attempting to collect a drug debt in Nashville, Tennessee.

14. Between on or about November 24, 1996 and in or around December 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," DONNELL YOUNG a/k/a "LIL' PESO," and other co-conspirators used and carried firearms, including semiautomatic assault weapons, while seeking retaliation against members of another gang in or around Los Angeles, California.

15. On or about January 21, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and abetted by each other and by Alfonso Lewis a/k/a "Tiny Donut," Woody Pilcher a/k/a "Screwloose," and other persons, used and carried a firearm equipped with a silencer while planning and preparing to kill Kenard Murry a/k/a "Coo-Coo" in Oklahoma City, Oklahoma.

16. On or about January 23, 1997, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and abetted by JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and others, used a firearm

11

equipped with a silencer to shoot and kill Kenard Murry a/k/a "Coo-Coo" and Regina Suetopka, and to shoot Kinberly Diamond Suetopka in Oklahoma City, Oklahoma.

17. On or about January 30, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," accompanied by EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," used and carried a firearm while threatening "Ki-Ki" in or around Las Vegas, Nevada.

18. On or about February 21, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by other persons, used a firearm equipped with a silencer to kill Barney Moten in Los Angeles, California.

19. In or around March, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" provided handguns to EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" and to a juvenile co-conspirator in Nashville, Tennessee.

20. On or about July 13, 1997, DONNELL YOUNG a/k/a "LIL' PESO," aided and abetted by another person, used and carried a firearm while he assaulted and tortured "Bootsie" in Oklahoma City, Oklahoma.

21. On or about August 2, 1997, DONNELL YOUNG a/k/a "LIL' PESO," used a firearm to shoot and kill Woody Pilcher a/k/a "Screwloose" in Oklahoma City, Oklahoma.

All in violation of Title 18, United States Code, Sections 924(o) and 2.

12

## COUNT FOUR
## (MONEY LAUNDERING CONSPIRACY)

The Grand Jury further charges:

1. Between in or around 1994 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendants JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," and PACIA SHAKIR a/k/a "PESO," did combine, conspire, confederate, and agree with each other, and with diverse other persons who are to the Grand Jury known and unknown, to commit the following offenses against the laws of the United States:

a. Money laundering with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

b. Money laundering with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

2. The defendants and their co-conspirators used the following means and methods, among others, to accomplish the objects of the conspiracy:

a. The defendants and their co-conspirators transferred, received, and assisted in transferring and receiving drug proceeds through various means, including through couriers,

13

bus shipments, Western Union wire transfers, and United States
postal money orders.

   b.   The defendants and their co-conspirators conducted
and attempted to conduct financial transactions through nominees
and through the use of false names and identifications.

   c.   The defendants and their co-conspirators used cash
drug proceeds to pay for travel, lodging, communication devices,
firearms, courier fees, false identification documents, bail, and
other expenses.

   d.   The defendants and their co-conspirators abducted
and assaulted other persons  to determine the disposition of drug
proceeds.

   In violation of Title 18, United States Code, Sections 2 and
1956(h).

## COUNT FIVE
### (USE/CARRY FIREARMS IN DRUG/VIOLENT FELONIES)

The Grand Jury further charges:

Between in or around 1995 and on or about September 16,
1997,  in the Middle District of Tennessee and elsewhere, the
defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG
SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," DERRICK
EATMON a/k/a "CHIP," DONNELL YOUNG a/k/a "LIL' PESO," and PACIA
SHAKIR a/k/a "PESO," aided and abetted by each other and by other
persons known and unknown to the Grand Jury, knowingly used and

14

carried firearms, including semiautomatic assault weapons, machineguns, and firearms equipped with firearm silencers and firearm mufflers, during the incidents described below, among others, during and in relation to drug trafficking crimes and crimes of violence for which each of them may be prosecuted in a court of the United States, that is, conspiracy to distribute controlled substances in violation of Title 21, United States Code, Section 846 and tampering with witnesses and informants in violation of Title 18, United States Code, Section 1512.

1.   In or around November 1995, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and others used a firearm during an armed robbery of a drug supplier in or around Inglewood, California.

2.   On or about April 14, 1996, DONNELL YOUNG a/k/a "LIL' PESO," aided and abetted by Alfonso Lewis a/k/a "Tiny Donut," used and carried a firearm while he assaulted and tortured "Little Vulture" in Oklahoma City, Oklahoma.

3.   On or about July 16, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm while abducting Shanese Harding in or around Los Angeles, California.

4.   On or about July 29, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm

15

, while abducting Philip Martin in or around Los Angeles, California.

5. On or about August 19, 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" carried a firearm while transporting a juvenile co-conspirator and cash in or around Los Angeles, California.

6. Between in and around August 1996 and in or around December 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" used and carried a firearm while threatening, assaulting, and taking a vehicle from Janice Kittrell a/k/a "Henny Loc" in Los Angeles, California.

7. Between on or about November 24, 1996 and in or around December 1996, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," DONNELL YOUNG a/k/a "LIL' PESO," and other co-conspirators used and carried firearms while seeking retaliation against members of another gang in or around Los Angeles, California.

8. On or about January 21, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and abetted by each other and by Alfonso Lewis a/k/a "Tiny Donut," and Woody Pilcher a/k/a "Screwloose," used and carried a firearm equipped with a silencer in Oklahoma City, Oklahoma.

16

9. On or about January 30, 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" used and carried a firearm while threatening "Ki-Ki" in or around Las Vegas, Nevada.

10. In or around March 1997, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" used and carried firearms, including delivering a firearm to a juvenile co-conspirator to use and carry while protecting co-conspirators, drugs, and drug trafficking assets in Nashville, Tennessee.

11. On or about July 13, 1997, DONNELL YOUNG a/k/a "LIL' PESO," aided and abetted by another person, used and carried a firearm while he assaulted and tortured "Bootsie" in Oklahoma City, Oklahoma.

In violation of Title 18, United States Code, Sections 2 and 924(c)(1).

## COUNT SIX
## (MONEY LAUNDERING TRANSACTION)

The Grand Jury further charges:

On or about March 24, 1995, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did cause another person to knowingly conduct a financial transaction affecting interstate commerce, to wit, the transfer of $3,500.00 by Western

17

Union wire transfer from "Bobby Scales" in Nashville, Tennessee to "Muneer Priester," an alias name used by the defendant in Los Angeles, California which involved the proceeds of a specified unlawful activity, that is, the distribution of controlled substances, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting, attempting to conduct, and causing to be conducted said financial transaction, the defendant knew that the property involved in the financial transaction, that is, funds of about $3,500.00, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

## THE KILLING OF SOLOMON HARRIS
### (Counts Seven and Eight)

### COUNT SEVEN
(CCE/DRUG CONSPIRACY - KILLING OF SOLOMON HARRIS)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. In or around September, 1995, while engaging in and working in furtherance of a continuing criminal enterprise as

18

, alleged in Count One of this Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," intentionally killed and counseled, commanded, induced, procured, and caused the intentional killing of Solomon Harris a/k/a "Solly," and such killing resulted in Los Angeles, California on or about September 30, 1995.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

### COUNT EIGHT
### (USE/CARRY FIREARM IN DRUG FELONY - KILLING OF SOLOMON HARRIS)

The Grand Jury further charges:

1.    On or about September 30, 1995, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and engaging in a continuing criminal enterprise, in violation of Title 21, United States

19

Code, Section 848, knowingly used and carried a firearm equipped with a firearm silencer or muffler, and did in the course of such violation cause the death of a person, that is Solomon Harris a/k/a "Solly," through the use of a firearm in Los Angeles, California, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

COUNT NINE
(MONEY LAUNDERING TRANSACTION)

The Grand Jury further charges:

On or about May 31, 1996, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE", aided and abetted by another person, did cause another person to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit, the delivery of $2,900.00 to a Western Union agent in Nashville, Tennessee for the attempted Western Union wire transfer of that amount to "Lisa Mackie" in California, which involved the proceeds of a specified unlawful activity, that is, the felonious dealing in a controlled substance punishable under the laws of the United States, knowing that the transaction was designed in whole or in part to conceal and

20

disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting, attempting to conduct, and causing to be conducted said financial transaction, the defendant knew that the property involved in the financial transaction, that is, funds of about $2,900.00, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

## THE KILLING OF ANTHONY ROGERS a/k/a "HANDYMAN"
### (Counts Ten and Eleven)

COUNT TEN
(CCE/DRUG CONSPIRACY - KILLING OF ANTHONY ROGERS)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. On or about July 20, 1996, while engaging in and working in furtherance of a continuing criminal enterprise as alleged in Count One of this Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section

21

. 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," intentionally killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Rogers a/k/a "Handyman" and such killing resulted in Oklahoma City, Oklahoma on or about July 20, 1996.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

## COUNT ELEVEN
## (USE/CARRY FIREARM IN DRUG FELONY - KILLING OF ANTHONY ROGERS)

The Grand Jury further charges:

1. On or about July 20, 1996, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," during and in relation to a drug trafficking crime for which JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" may be prosecuted in a court of the United States, that is, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, did knowingly use and carry a firearm, and did in the course of such violation cause the death of a person, that is Anthony Rogers, a/k/a "Handyman," through the use of a firearm in Oklahoma City, Oklahoma, the killing of whom was murder as

22

defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

COUNT TWELVE
(USING MINORS IN DRUG TRAFFICKING)

The Grand Jury further charges:

Between in or around July 1996 and in or around November, 1996, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," who was then at least eighteen years of age, did knowingly and intentionally employ, hire, use, persuade, induce, entice, and coerce persons who were then under eighteen years of age, to knowingly and intentionally possess and aid and abet the possession of cocaine and crack cocaine, Schedule II controlled substances, with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and to participate in a conspiracy to distribute such controlled substances, in violation of Title 21, United States Code, Section 846.

In violation of Title 21, United States Code, Section 861 and Title 18, United States Code, Section 2.

23

## COUNT THIRTEEN
## (USE/CARRY FIREARM IN DRUG FELONY - USE OF MINORS)

The Grand Jury further charges:

Between on or about August 19, 1996 and in or around November, 1996, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did knowingly use and carry firearms, including a semiautomatic assault weapon, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the employment and use of persons under eighteen years of age in a drug trafficking offense in violation of Title 21, United States Code, Section 861.

In violation of Title 18, United States Code, Sections 2 and 924(c)(1).

## COUNT FOURTEEN
## (MONEY LAUNDERING TRANSACTION)

The Grand Jury further charges:

On or about November 4, 1996, in the Middle District of Tennessee, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and Marcus Randall a/k/a "Ramsey," did knowingly conduct, attempt to conduct, and cause to be conducted, a financial transaction affecting interstate commerce, to wit: the transfer of title to the real property generally known as

24

1104 Douglas Avenue, Nashville, Tennessee, into the name of Neqael Jones, an alias name used by Lameisha Anderson a/k/a "Geep-Geep" during this transaction in order to shield the identity of the actual purchaser of said real estate, which transaction involved the proceeds of a specified unlawful activity, that is felonious dealing in a controlled substance punishable under the laws of the United States, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," knew that the property involved in the financial transaction, that is the funds of about $5,400.00, represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

COUNT FIFTEEN
(ATTEMPTED HOBBS ACT ROBBERY/EXTORTION OF "CRUMB")

The Grand Jury further charges:

On or about November 8, 1996, in the Middle District of Tennessee, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by another person, did unlawfully attempt to obstruct, delay, and affect commerce as

25

that term is defined in Title 18, United States Code, Section
1951, and the movement of articles and commodities in such
commerce, by robbery and extortion, as those terms are defined in
Title 18, United States Code, Section 1951, and did commit and
threaten physical violence to another person known as "Crumb" in
furtherance of a plan and purpose to commit such a robbery and
extortion, by attempting to collect a debt relating to a previous
cocaine transaction through the wrongful use of actual and
threatened force, violence, and fear.

In violation of Title 18, United States Code, Sections 2 and
1951.

COUNT SIXTEEN
(USE/CARRY FIREARM IN VIOLENT FELONY - HOBBS ACT
ROBBERY/EXTORTION)

The Grand Jury further charges:

On or about November 8, 1996, in the Middle District of
Tennessee, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT"
a/k/a "BIG SCREWLOOSE," aided and abetted by another person,
knowingly used and carried a firearm during and in relation to a
crime of violence for which he may be prosecuted in a court of
the United States, that is, an attempted Hobbs Act extortion and
robbery in violation of Title 18, United States Code, Section
1951.

In violation of Title 18, United States Code, Sections 2 and
924(c)(1).

26

### THE KILLINGS OF
### KENARD MURRY a/k/a "COO-COO" AND REGINA SUETOPKA
### AND
### THE SHOOTING OF KINBERLY DIAMOND SUETOPKA
### (Counts Seventeen through Twenty-Six)

COUNT SEVENTEEN
(USE OF INTERSTATE FACILITIES - RESULTING IN MULTIPLE DEATHS)

The Grand Jury further charges:

On or about January 21, 1997, in the Middle District of Tennessee and elsewhere, the defendants, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE"and JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE,"did travel and cause travel in interstate commerce from Nashville, Tennessee to Oklahoma City, Oklahoma, and did use a facility in interstate commerce, that is, the interstate telephone system, with intent to commit a crime of violence to further unlawful activity, that is, a business enterprise involving controlled substances in violation of the laws of the United States; and to promote, manage, carry on, and to facilitate the promotion, management, and carrying on, of such unlawful activity, and did thereafter commit and attempt to commit a crime of violence to further such unlawful activity, which resulted in the deaths of Kenard Murry a/k/a "Coo-Coo," and Regina Suetopka, and the shooting of Kinberly Diamond Suetopka.

In violation of Title 18, United States Code, Sections 2 and 1952.

27

## COUNT EIGHTEEN
## (CCE/DRUG CONSPIRACY - KILLING OF KENARD MURRY)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. In or around January, 1997, while engaging in and working in furtherance of a continuing criminal enterprise as alleged in Count One of this Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," intentionally killed and counseled, commanded, induced, procured, and caused the intentional killing of Kenard Murry, a/k/a "Coo-Coo," and such killing did result in Oklahoma City, Oklahoma on or about January 23, 1997.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

28

## COUNT NINETEEN
## (CCE/DRUG CONSPIRACY – KILLING OF REGINA SUETOPKA)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. In or around January, 1997, while engaging in and working in furtherance of a continuing criminal enterprise as alleged in Count One of this Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," intentionally killed and counseled, commanded, induced, procured, and caused the intentional killing of Regina Suetopka, and such killing did result in Oklahoma City, Oklahoma on or about January 23, 1997.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

29

## COUNT TWENTY
### (MURDER OF KENARD MURRY TO OBSTRUCT JUSTICE)

The Grand Jury further charges:

Or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," did unlawfully kill a person, that is, Kenard Murry a/k/a "Coo-Coo," the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought, perpetrated with intent to prevent Kenard Murry a/k/a "Coo-Coo" from communicating information relating to the commission and possible commission of one or more federal offenses to a law enforcement officer of the United States.

In violation of Title 18, United States Code, Sections 2 and 1512(a)(1)(c).

## COUNT TWENTY-ONE
### (MURDER OF REGINA SUETOPKA TO OBSTRUCT JUSTICE)

The Grand Jury further charges:

Or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," did unlawfully kill a person, that is,

30

Regina Suetopka, the killing of whom was murder as defined by
Title 18, United States Code, Section 1111, that is, the
unlawful, willful, deliberate, malicious, and premeditated
killing of a human being with malice aforethought, perpetrated
from a premeditated design unlawfully and maliciously to effect
the death of a human being other than Regina Suetopka, that is
Kenard Murry a/k/a "Coo-Coo," and perpetrated with intent to
prevent Regina Suetopka from communicating information relating
to the commission and possible commission of one or more federal
offenses to a law enforcement officer of the United States.

In violation of Title 18, United States Code, Sections 2 and
1512(a)(1).

### COUNT TWENTY-TWO
### (USE/CARRY FIREARM IN DRUG/VIOLENT FELONY -
### KILLING OF KENARD MURRY)

The Grand Jury further charges:

On or about January 23, 1997, in the Middle District of
Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a
"DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a
"BONE" a/k/a "Q-BONE," did knowingly and unlawfully use and carry
a firearm equipped with a firearm silencer or muffler during and
in relation to a crime of violence and a drug trafficking crime
for which JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG
SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," may be
prosecuted in a court of the United States, that is, witness

31

tampering, in violation of Title 18, United States Code, Section 1512, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and did in the course of such violation cause the death of a person, that is Kenard Murry, a/k/a "Coo-Coo," through the use of a firearm in Oklahoma City, Oklahoma, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code, Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

### COUNT TWENTY-THREE
### (USE/CARRY FIREARM IN DRUG/VIOLENT FELONY - KILLING OF REGINA SUETOPKA)

The Grand Jury further charges:

On or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," did knowingly and unlawfully use and carry a firearm equipped with a firearm silencer or muffler during and in relation to a crime of violence and a drug trafficking crime for which JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" may be

32

prosecuted in a court of the United States, that is, witness tampering, in violation of Title 18, United States Code, Section 1512, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and did in the course of such violation cause the death of a person, that is Regina Suetopka, through the use of a firearm in Oklahoma City, Oklahoma, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought, and perpetrated from a premeditated design to unlawfully and maliciously effect the death of a human being other than Regina Suetopka, that is Kenard Murry a/k/a "Coo-Coo."

In violation of Title 18, United States Code, Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

COUNT TWENTY-FOUR
(SHOOTING INTO GROUP - KILLING OF KENARD MURRY)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

33

2. On or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," fired a weapon, into a group of two or more persons, that is, Kenard Murry a/k/a "Coo-Coo," Regina Suetopka, and Kinberly Diamond Suetopka, in furtherance and to escape detection of a major drug offense, that is, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, with intent to intimidate, harass, injure, and maim, and in the course of such conduct did kill Kenard Murry a/k/a "Coo-Coo," the killing of whom was first degree murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code Sections 2 and 36.

COUNT TWENTY-FIVE
(SHOOTING INTO GROUP - KILLING OF REGINA SUETOPKA)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

34

2. On or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," fired a weapon into a group of two or more persons, that is, Kenard Murry a/k/a "Coo-Coo," Regina Suetopka, and Kinberly Diamond Suetopka, in furtherance and to escape detection of a major drug offense, that is, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, with intent to intimidate, harass, injure, and maim, and in the course of such conduct did kill Regina Suetopka, the killing of whom was first degree murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought, and perpetrated from a premeditated design to unlawfully and maliciously effect the death of another human being, that is, Kenard Murry a/k/a "Coo- Coo."

In violation of Title 18, United States Code, Sections 2 and 36.

35

## COUNT TWENTY-SIX
## (SHOOTING INTO GROUP - GRAVE RISK TO KINBERLY DIAMOND SUETOPKA)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. On or about January 23, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," fired a weapon, into a group of two or more persons, that is, Kenard Murry a/k/a "Coo-Coo," Regina Suetopka, and Kinberly Diamond Suetopka, in furtherance and to escape detection of a major drug offense, that is, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, with intent to intimidate, harass, injure, and maim, and in the course of such conduct caused grave risk to the life of Kinberly Diamond Suetopka.

In violation of Title 18, United States Code, Sections 2 and 36.

36

## THE KILLING OF BARNEY MOTEN
## (Counts Twenty-Seven through Twenty-Nine)

### COUNT TWENTY-SEVEN
### (CCE/DRUG CONSPIRACY - KILLING OF BARNEY MOTEN)

The Grand Jury further charges:

1. The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2. In or around February 1997, while engaging in and working in furtherance of a continuing criminal enterprise as alleged in Count One of this Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did intentionally kill, and did counsel, command, induce, procure and cause the intentional killing of Barney Moten, and such killing did result in Los Angeles, California on or about February 21, 1997.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

37

## COUNT TWENTY-EIGHT
### (KILLING OF BARNEY MOTEN TO OBSTRUCT JUSTICE)

The Grand Jury further charges:

Or about February 21, 1997, in the Middle District of Tennessee and elsewhere, the defendant, -JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did unlawfully kill a person, that is, Barney Moten, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought, and perpetrated with intent to prevent Barney Moten from communicating information relating to the commission and possible commission of one or more federal offenses to a law enforcement officer of the United States.

In violation of Title 18, United States Code, Sections 1512(a)(1) and 2.

## COUNT TWENTY-NINE
### (USE/CARRY FIREARM IN DRUG/VIOLENT FELONY - KILLING OF BARNEY MOTEN)

The Grand Jury further charges:

On or about February 21, 1997, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," did knowingly and unlawfully use and carry a firearm equipped with a firearm silencer or muffler, during and in relation to a crime of

38

violence and a drug trafficking crime, for which JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" may be prosecuted in a court of the United States, that is, witness tampering, in violation of Title 18, United States Code, Section 1512, conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Section 846, and engaging in a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848, and did in the course of such violation cause the death of a person, that is Barney Moten through the use of a firearm in Los Angeles, California, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code, Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

## COUNT THIRTY
### (USING A MINOR IN DRUG TRAFFICKING)

The Grand Jury further charges:

In or around March 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," each of whom were then at least eighteen years of age, did knowingly and intentionally employ, hire, use, persuade,

39

induce, and entice a person who was then under eighteen years of age, to knowingly and intentionally possess and aid and abet the possession of marihuana, a Schedule I controlled substance, with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1), and to participate in a conspiracy to distribute controlled substances, including marihuana, cocaine, and crack cocaine in violation of Title 21, United States Code, Section 846.

In violation of Title 21, United States Code, Section 861 and Title 18, United States Code, Section 2.

## COUNT THIRTY-ONE
### (MONEY LAUNDERING TRANSACTION)

The Grand Jury further charges:

On or about March 20, 1997, in the Middle District of Tennessee and elsewhere, the defendant, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," aided and abetted by other persons, did cause another person to knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce, to wit, the delivery of about $1,500.00 in cash to a Western Union agent in Nashville, Tennessee for the attempted Western Union wire transfer of that amount from "Mark Brown" in Nashville, Tennessee to Toni Tulloch in Atlanta, Georgia, which transfer involved the proceeds of a specified unlawful activity, that is, felonious dealing in a controlled substance punishable under the laws of the United States, knowing

40

that the transaction was designed in whole or in part to conceal

and disguise the nature, location, source, ownership, and control

of the proceeds of said specified unlawful activity, and that

while conducting, attempting to conduct, or causing to be

conducted said financial transaction, the defendant knew that the

property involved in the financial transaction, that is, funds of

about $1,500.00 represented the proceeds of some form of unlawful

activity.

In violation of Title 18, United States Code, Sections 2 and

1956(a)(1)(B)(i).

**THE SHOOTING AND ROBBERY OF**
**ALFONSO LEWIS a/k/a "TINY DONUT" AND CHARLES WILLIAMS**
**(Counts Thirty-two through Thirty-six)**

COUNT THIRTY-TWO
(POSSESSION OF DRUGS WITH INTENT TO DISTRIBUTE)

The Grand Jury further charges:

Between on or about May 19, 1997 and on or about May 21,

1997, in the Middle District of Tennessee and elsewhere, the

defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG

SCREWLOOSE" and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and

abetted by each other and by other persons known and unknown to

the Grand Jury, did knowingly and intentionally possess, with

intent to distribute, 500 grams or more of cocaine and 50 grams

or more of cocaine base ("crack cocaine"), Schedule II controlled

substances.

41

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT THIRTY-THREE
### (POSSESSION OF STOLEN FIREARM)

The Grand Jury further charges:

On or about May 21, 1997, in the Middle District of Tennessee, the defendant, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," did knowingly possess a stolen firearm which had previously been shipped or transported in interstate or foreign commerce before it was stolen, knowing and having reasonable cause to believe that said firearm was stolen.

In violation of Title 18, United States Code, Sections 922(j) and 924(a)(2).

## COUNT THIRTY-FOUR
### (HOBBS ACT ROBBERY-THE RIVERSIDE DRIVE SHOOTING)

The Grand Jury further charges:

On or about May 22, 1997, in the Middle District of Tennessee, the defendant, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and abetted by others, did unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by robbery as that term is defined in Title 18, United States Code, Section 1951, in that EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE", aided and abetted by others, did unlawfully take and

42

obtain personal property consisting of cocaine, crack cocaine, and cash drug proceeds, from the person or in the presence of Alfonso Lewis a/k/a "Tiny Donut" and Charles Williams, the owners or possessors of said property, against their will by means of actual and threatened force, violence, and fear of injury to their persons, and EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE", aided by others, did commit physical violence to the owners or possessors of said property by shooting them, all in furtherance of a plan and purpose to commit said robbery.

In violation of Title 18, United States Code, Sections 2 and 1951.

COUNT THIRTY-FIVE
(POSSESSION OF DRUGS WITH INTENT TO DISTRIBUTE)

The Grand Jury further charges:

On or about May 22, 1997, in the Middle District of Tennessee, the defendant, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," knowingly and intentionally did unlawfully possess with intent to distribute a controlled substance, to wit, a quantity of cocaine and 50 grams or more of cocaine base ("crack cocaine"), Schedule II controlled substances.

In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

43

## COUNT THIRTY-SIX
## (USE/CARRY FIREARM IN DRUG/VIOLENT FELONY)

The Grand Jury further charges:

On or about May 22, 1997, in the Middle District of Tennessee, the defendant, EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE," aided and abetted by others, knowingly used and carried a firearm during and in relation to a crime of violence and a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, that is, a Hobbs Act robbery in violation of Title 18, United States Code, Section 1951, and possession of controlled substances with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

In violation of Title 18, United States Code, Sections 2 and 924(c)(1).

## THE KILLING OF WOODY PILCHER A/K/A "SCREWLOOSE"
## (Counts Thirty-Seven through Thirty-Nine)

### COUNT THIRTY-SEVEN
### (CCE/DRUG CONSPIRACY - KILLING OF WOODY PILCHER)

The Grand Jury further charges:

1.  The allegations set forth in Counts One and Two above are realleged and incorporated by reference herein as if restated in their entirety.

2.  Between in or around March 1997 and on or about August 2, 1997, while engaging in and working in furtherance of  a continuing criminal enterprise as alleged in Count One of this

44

Indictment in violation of Title 21, United States Code, Section 848, and engaging in a conspiracy to distribute controlled substances as alleged in Count Two of this Indictment in violation of Title 21, United States Code, Section 846, and punishable under Title 21, United States Code, Section 841(b)(1)(A), in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and DONNELL YOUNG a/k/a "LIL' PESO," intentionally killed and counseled, commanded, induced, procured and caused the intentional killing of Woody Pilcher, a/k/a "Screwloose," and such killing did result in Oklahoma City, Oklahoma on or about August 2, 1997.

In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.

## COUNT THIRTY-EIGHT
### (KILLING OF WOODY PILCHER TO OBSTRUCT JUSTICE)

The Grand Jury further charges:

On about August 2, 1997, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and DONNELL YOUNG a/k/a "LIL' PESO," did unlawfully kill a person, that is, Woody Pilcher a/k/a "Screwloose," the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious and premeditated killing of a human being with malice aforethought, and

45

perpetrated with intent to prevent Woody Pilcher a/k/a
"Screwloose," from communicating information relating to the
commission and possible commission of one or more federal
offenses to a law enforcement officer of the United States.

In violation of Title 18, United States Code, Sections 2 and
1512(a)(1).

COUNT THIRTY-NINE
(USE/CARRY FIREARM IN DRUG/VIOLENT FELONY -
KILLING OF WOODY PILCHER)

The Grand Jury further charges:

On or about August 2, 1997, in the Middle District of
Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a
"DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and DONNELL YOUNG
a/k/a "LIL' PESO," did knowingly and unlawfully use and carry a
firearm during and in relation to a crime of violence and a drug
trafficking crime for which JAMAL SHAKIR a/k/a "DONUT" a/k/a
"NUT" a/k/a "BIG SCREWLOOSE" and DONNELL YOUNG a/k/a "LIL' PESO,"
may be prosecuted in a court of the United States, that is,
witness tampering, in violation of Title 18, United States Code,
Section 1512, conspiracy to distribute controlled substances, in
violation of Title 21, United States Code, Section 846, and
engaging in a continuing criminal enterprise, in violation of
Title 21, United States Code, Section 848, and did in the course
of such violation cause the death of a person, that is Woody
Pilcher a/k/a "Screwloose" through the use of a firearm in

46

Oklahoma City, Oklahoma, the killing of whom was murder as defined by Title 18, United States Code, Section 1111, that is, the unlawful, willful, deliberate, malicious, and premeditated killing of a human being with malice aforethought.

In violation of Title 18, United States Code, Sections 2, 924(c)(1), and 924(j)[formerly enumerated as 924(i)].

## COUNT FORTY
## (OBSTRUCTION OF JUSTICE)

The Grand Jury further charges:

Between in or around November 1997 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and PACIA SHAKIR a/k/a "PESO," did knowingly attempt to intimidate, threaten, and corruptly persuade other persons with the intent to influence, delay, and prevent the testimony of other persons in an official proceeding, that is, the federal grand jury investigation in the Middle District of Tennessee leading to the return of this Indictment and the underlying Indictments, and the trial of the charges contained in such Indictments, and to hinder, delay, and prevent the communication of information relating to the commission and possible commission of one or more federal offenses to a law enforcement officer of the United States.

47

In violation of Title 18, United States Code, Sections 2 and 1512(b)(3).

## COUNT FORTY-ONE
## (OBSTRUCTION OF JUSTICE)

The Grand Jury further charges:

From in or around April 1998 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE" and PACIA SHAKIR a/k/a "PESO," did corruptly endeavor to influence, obstruct, and impede the due administration of justice in the federal grand jury investigation in the Middle District of Tennessee leading to the return of this Indictment and the underlying Indictments, and in the trial of the charges contained in such Indictments, through means such as offering and attempting to conceal and bribe people with knowledge relevant to those proceedings, threatening to harm such people, and attempting to have such people make knowingly false statements in connection with incidents relevant to those proceedings.

In violation of Title 18, United States Code, Sections 2 and 1503.

## COUNT FORTY-TWO
## (OBSTRUCTION OF JUSTICE)

The Grand Jury further charges:

48

1. Between in or around January 1999 and on or about September 30, 1999, in the Middle District of Tennessee and elsewhere, the defendants EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" and DONNELL YOUNG a/k/a "LIL' PESO," did corruptly, by physical force, by threats of physical force, and by threatening communications, endeavor to influence, obstruct, and impede the due administration of justice in the federal grand jury investigation in the Middle District of Tennessee leading to the return of this Indictment and the underlying Indictments, and in the trial of the charges contained in such Indictments by intimidating, threatening, and assaulting co-defendants and potential witnesses.

2. Furthermore, this offense occurred in connection with the trial of a criminal case, and the acts committed by the defendants EBEN PAYNE a/k/a "BONE" a/k/a "Q-BONE" and DONNELL YOUNG a/k/a "LIL' PESO" involved physical force and the threat of physical force.

In violation of Title 18, United States Code, Sections 2 and 1503.

## COUNT FORTY-THREE
### (FORFEITURE COUNT - CONTINUING CRIMINAL ENTERPRISE)

As a result of his engagement in the continuing criminal enterprise as alleged in Count One of this Indictment, the defendant JAMAL SHAKIR a/k/a "DONUT" a/k/a "NUT" a/k/a "BIG SCREWLOOSE," shall forfeit to the United States, pursuant to

49

Title 21, United States Code, Section 853, any and all property, real and personal, constituting or derived from any proceeds the said defendant obtained directly or indirectly as a result of the said enterprise; any and all property used or intended to be used in any manner or part to commit or facilitate the commission of the said offenses; and any of said defendant's interest in, claims against and property and contractual rights of any kind that afforded a source of influence over the said continuing criminal enterprise, including but not limited to approximately $3,000,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was received in exchange for the distribution of controlled substances and subsequently spent, distributed or otherwise disposed of.

If any of the property described above as being subject to forfeiture pursuant to Title 21, United States Code, Section 853, as a result of any act or omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot

be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), to seek forfeiture of any

other property of said defendant up to the value of said property

listed above as being subject to forfeiture.

All in violation of Title 21, United States Code, Section

853.

## COUNT FORTY-FOUR
### (FORFEITURE COUNT - DRUG TRAFFICKING CONSPIRACY)

As a result of the foregoing offense contained in Count Two

of this Indictment, defendants, JAMAL SHAKIR a/k/a "DONUT" a/k/a

"NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a "Q-

BONE," PACIA SHAKIR a/k/a "PESO," DONNELL YOUNG a/k/a "LIL'

PESO," and DERRICK EATMON a/k/a "CHIP," shall forfeit to the

United States, pursuant to Title 21, United States Code, Section

853, any and all property, real and personal, involved in said

offenses, and all property traceable to such property, including

but not limited to approximately $3,000,000.00 in United States

currency and all interest and proceeds traceable thereto, in that

such sum in aggregate is property which was used and intended to

be used to commit and to facilitate the commission of a drug

trafficking offense, and constitutes and is derived from the

proceeds of a drug trafficking offense, in violation of Title 21,

United States Code, Sections 846 and 853.

51

If any of the property described above as being subject to
forfeiture pursuant to Title 21, United States Code, Section 853,
as a result of any act or omission of the defendants,

     (a)   cannot be located upon the exercise of due
diligence;

     (b)   has been transferred or sold to, or deposited with
a third party;

     (c)   has been placed beyond the jurisdiction of the
court;

     (d)   has been substantially diminished in value; or

     (e) has been commingled with other property that cannot
be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), to seek forfeiture of any
other property of said defendants up to the value of said
property listed above as being subject to forfeiture.

All in violation of Title 21, United States Code, Section
853.

COUNT FORTY-FIVE
(FORFEITURE COUNT - MONEY LAUNDERING)

As a result of the foregoing offenses contained in Count
Four of this Indictment, defendants JAMAL SHAKIR a/k/a "DONUT"
a/k/a "NUT" a/k/a "BIG SCREWLOOSE," EBEN PAYNE a/k/a "BONE" a/k/a
"Q-BONE," and PACIA SHAKIR a/k/a "PESO," shall forfeit to the
United States, pursuant to Title 18, United States Code, Section

52

982, all property, real and personal, involved in said offenses, and all property traceable to such property, including but not limited to approximately $3,000,000.00 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property which was involved in a money laundering offense and is traceable to such property, in violation of Title 18, United States Code, Sections 1956 and 982.

If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982, as a result of any act or omission of the defendants,

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with a third party;

    (c)   has been placed beyond the jurisdiction of the court;

    (d)   has been substantially diminished in value; or

    (e) has been commingled with other property that cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(a)(7)(B), to seek forfeiture of any other property of said defendants up to the

53

value of said property listed above as being subject to
forfeiture.

All in violation of Title 18, United States Code, Section
982.

## NOTICE OF SPECIAL FINDINGS

1. The grand jury repeats and realleges the accusations of
Counts Seven, Eight, Ten, Eleven, Eighteen, Nineteen, Twenty,
Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five,
Twenty-seven, Twenty-eight, Twenty-nine, Thirty-seven,
Thirty-eight, and Thirty-nine of this indictment.

2. As to Counts Seven, Eight, Ten, Eleven, Eighteen,
Nineteen, Twenty, Twenty-one, Twenty-two, Twenty-three,
Twenty-four, Twenty-five, Twenty-seven, Twenty-eight,
Twenty-nine, Thirty-seven, Thirty-eight, and Thirty-nine, the
defendants Jamal Shakir, Eben Payne, and Donnell Young were 18
years of age or older at the time of the offenses.

3. As to Count Seven:

(a) Defendant JAMAL SHAKIR intentionally engaged in
conduct intending that the victim be killed or that lethal force
be employed against the victim, which resulted in the death of
the victim. 21 U.S.C. §848(n)(1)(C).

(b) Defendant JAMAL SHAKIR intentionally engaged in
conduct which he knew would create a grave risk of death to a
person, other than one of the participants in the offense, and

54

which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(D).

(c)     Defendant JAMAL SHAKIR has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one-year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person. 21 U.S.C. §848(n)(3).

(d)     Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value. 21 U.S.C. §848(n)(7).

(e)     Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation. 21 U.S.C. §848(n)(8).

(f)     The violation of subchapter I of Title 21, United States Code, in relation to which defendant JAMAL SHAKIR committed the conduct described in 21 U.S.C. §848(e) was a violation of 21 U.S.C. §859. 21 U.S.C. §848(n)(11).[1]

4.     As to Count Eight:

---

[1] In other words, the defendant committed the charged offense while working in furtherance of a continuing criminal enterprise or while engaging in a drug trafficking conspiracy involving 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine or involving 50 grams or more of a mixture or substance containing cocaine base, and the continuing criminal enterprise or drug conspiracy involved the distribution of a controlled substance to a person under 21 years of age by a person who was at least 18 years of age.

55

(a)    Defendant JAMAL SHAKIR, intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.    18 U.S.C. §3591(a)(2)(C).

(b)    Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.    18 U.S.C. §3592(c)(4).

(c)    Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value. 18 U.S.C. §3592(c)(8).

(d)    Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation to cause the death of a person.    18 U.S.C. §3592(c)(9).

(e)    Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859.    18 U.S.C. §3592(c)(13).

5.    As to Count Ten:

56

(a)　Defendant JAMAL SHAKIR intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim.　21 U.S.C. §848(n)(1)(C).

(b)　Defendant JAMAL SHAKIR intentionally engaged in conduct which he knew would create a grave risk of death to a person, other than one of the participants in the offense, and which resulted in the death of the victim.　21 U.S.C. §848(n)(1)(D).

(c)　Defendant JAMAL SHAKIR has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.　21 U.S.C. §848(n)(3).

(d)　Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.　21 U.S.C. §848(n)(6).

(e)　Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value.　21 U.S.C. §848(n)(7).

(f)　Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation.　21 U.S.C. §848(n)(8).

57

(g)   The violation of subchapter I of Title 21, United States Code, in relation to which defendant JAMAL SHAKIR committed the conduct described in 21 U.S.C. §848(e) was a violation of 21 U.S.C. §859. 21 U.S.C. §848(n)(11), as set forth in footnote 1.

6.   As to Count Eleven:

(a)   Defendant JAMAL SHAKIR, intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.   18 U.S.C. §3591(a)(2)(C).

(b)   Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.   18 U.S.C. §3592(c)(4).

(c)   Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.   18 U.S.C. §3592(c)(7).

(d)   Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value. 18 U.S.C. §3592(c)(8).

58

(e)    Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation to cause the death of a person.  18 U.S.C. §3592(c)(9).

(f)    Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859.  18 U.S.C. §3592(c)(13).

7.    As to Counts Eighteen and Nineteen:

(a)    Defendant EBEN PAYNE intentionally  killed the victim.  21 U.S.C. § 848(n)(1)(A).

(b)    Defendant EBEN PAYNE intentionally inflicted serious bodily injury which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(B).

(c)    Defendants JAMAL SHAKIR and EBEN PAYNE intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim.  21 U.S.C. §848(n)(1)(C).

(d)    Defendants JAMAL SHAKIR and EBEN PAYNE intentionally engaged in conduct which each of them knew would create a grave risk of death to a person, other than one of the participants in the offense, and which resulted in the death of the victim.  21 U.S.C. §848(n)(1)(D).

59

(e)  Defendant JAMAL SHAKIR has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.  21 U.S.C. §848(n)(3).

(f)  In the commission of the offense, or in escaping apprehension for a violation of 21 U.S.C. §848(e), Defendants JAMAL SHAKIR and EBEN PAYNE knowingly created a grave risk of death to one or more persons in addition to the victim of the offense.  21 U.S.C. §848(n)(5).

(g)  Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.  21 U.S.C. §848(n)(6).

(h)  Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense in the expectation of the receipt of anything of pecuniary value.  21 U.S.C. §848(n)(7).

(i)  Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense after substantial planning and premeditation.  21 U.S.C. §848(n)(8).

(j)  The violation of subchapter I of Title 21, United States Code, in relation to which defendants JAMAL SHAKIR and EBEN PAYNE committed the conduct described in 21 U.S.C. §848(e)

60

was a violation of 21 U.S.C. §859. 21 U.S.C. §848(n)(11), as set forth in footnote 1.

8. As to Counts Twenty, Twenty-one, Twenty-four, and Twenty-five:

(a) Defendant EBEN PAYNE intentionally killed the victim. 18 U.S.C. §3591(a)(2)(A).

(b) Defendant EBEN PAYNE intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B).

(c) Defendants JAMAL SHAKIR and EBEN PAYNE intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C).

(d) Defendant EBEN PAYNE intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(D).

(e) Defendant JAMAL SHAKIR has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or

61

attempted or threatened use of a firearm (as defined in 18 U.S.C. §921) against another person. 18 U.S.C. §3592(c)(2).

(f) Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person. 18 U.S.C. §3592(c)(4).

(g) Defendants JAMAL SHAKIR and EBEN PAYNE, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. 18 U.S.C. §3592(c)(5).

(h) Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value. 18 U.S.C. §3592(c)(7).

(i) Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense in the expectation of the receipt of anything of pecuniary value. 18 U.S.C. §3592(c)(8).

(j) Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense after substantial planning and premeditation to cause the death of a person. 18 U.S.C. §3592(c)(9).

62

(k) Defendant EBEN PAYNE intentionally killed or attempted to kill more than one person in a single criminal episode. 18 U.S.C. §3592(c)(16).

(l) Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859. 18 U.S.C. §3592(c)(13).

9. As to Counts Twenty-two and Twenty-three:

(a) Defendant EBEN PAYNE intentionally killed the victim. 18 U.S.C. §3591(a)(2)(A).

(b) Defendant EBEN PAYNE intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B).

(c) Defendants JAMAL SHAKIR and EBEN PAYNE intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C).

(d) Defendant EBEN PAYNE intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act

63

constituted a reckless disregard for human life and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(D).

(e)  Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person. 18 U.S.C. §3592(c)(4).

(f)  Defendants JAMAL SHAKIR and EBEN PAYNE, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense. 18 U.S.C. §3592(c)(5).

(g)  Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value. 18 U.S.C. §3592(c)(7).

(h)  Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense in the expectation of the receipt of anything of pecuniary value. 18 U.S.C. §3592(c)(8).

(i)  Defendants JAMAL SHAKIR and EBEN PAYNE committed the offense after substantial planning and premeditation to cause the death of a person. 18 U.S.C. §3592(c)(9).

64

(j) Defendant EBEN PAYNE intentionally killed or attempted to kill more than one person in a single criminal episode. 18 U.S.C. §3592(c)(16).

(k) Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859. 18 U.S.C. §3592(c)(13).

10. As to Count Twenty-seven:

(a) Defendant JAMAL SHAKIR intentionally killed the victim. 21 U.S.C. §848(n)(1)(A).

(b) Defendant JAMAL SHAKIR intentionally inflicted serious bodily injury which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(B).

(c) Defendant JAMAL SHAKIR intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(C).

(d) Defendant JAMAL SHAKIR intentionally engaged in conduct which he knew would create a grave risk of death to a person, other than one of the participants in the offense, and which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(D).

65

(e)    Defendant JAMAL SHAKIR has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.  21 U.S.C. §848(n)(3).

(f)    Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value.  21 U.S.C. §848(n)(7).

(g)    Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation.  21 U.S.C. §848(n)(8).

(h)    The violation of subchapter I of Title 21, United States Code, in relation to which defendant JAMAL SHAKIR committed the conduct described in 21 U.S.C. §848(e) was a violation of 21 U.S.C. §859.  21 U.S.C. §848(n)(11), as set forth in footnote 1.

11.    As to Count Twenty-eight:

(a)    Defendant JAMAL SHAKIR intentionally killed the victim.  18 U.S.C. §3591(a)(2)(A).

(b)    Defendant JAMAL SHAKIR intentionally inflicted serious bodily injury that resulted in the death of the victim.  18 U.S.C. §3591(a)(2)(B).

(c)    Defendant JAMAL SHAKIR, intentionally participated in an act, contemplating that the life of a person would be taken

66

or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C).

(d)   Defendant JAMAL SHAKIR intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(D).

(e)   Defendant JAMAL SHAKIR has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in 18 U.S.C. §921) against another person. 18 U.S.C. §3592(c)(2).

(f)   Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person. 18 U.S.C. §3592(c)(4).

(g)   Defendant JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value. 18 U.S.C. §3592(c)(8).

67

(h)   Defendant JAMAL SHAKIR committed the offense after substantial planning and premeditation to cause the death of a person.   18 U.S.C. §3592(c)(9).

(i)   Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859.   18 U.S.C. §3592(c)(13).

12.   As to Count Twenty-nine:

(a)   Defendant JAMAL SHAKIR intentionally killed the victim.   18 U.S.C. §3591(a)(2)(A).

(b)   Defendant JAMAL SHAKIR intentionally inflicted serious bodily injury that resulted in the death of the victim.   18 U.S.C. §3591(a)(2)(B).

(c)   Defendant JAMAL SHAKIR, intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.   18 U.S.C. §3591(a)(2)(C).

(d)   Defendant JAMAL SHAKIR  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act

68

constituted a reckless disregard for human life and the victim
died as a direct result of the act.  18 U.S.C. §3591(a)(2)(D).

(e)  Defendant JAMAL SHAKIR has previously been
convicted of two or more Federal or State offenses, each
punishable by a term of imprisonment of more than one year,
committed on different occasions, involving the infliction of, or
attempted infliction of, serious bodily injury or death upon
another person.  18 U.S.C. §3592(c)(4).

(f)  Defendant JAMAL SHAKIR committed the offense in
the expectation of the receipt of anything of pecuniary value.
18 U.S.C. §3592(c)(8).

(g)  Defendant JAMAL SHAKIR committed the offense after
substantial planning and premeditation to cause the death of a
person.  18 U.S.C. §3592(c)(9).

(h)  Defendant JAMAL SHAKIR committed the offense in
the course of engaging in a continuing criminal enterprise in
violation of 21 U.S.C. §848(c) and that violation involved the
distribution of drugs to persons under the age of 21 in violation
of 21 U.S.C. §859.  18 U.S.C. §3592(c)(13).

13.  As to Count Thirty-seven:

(a)  Defendant DONNELL YOUNG intentionally  killed the
victim.  21 U.S.C. §848(n)(1)(A).

69

(b) Defendant DONNELL YOUNG intentionally inflicted serious bodily injury which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(B).

(c) Defendants DONNELL YOUNG and JAMAL SHAKIR intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(C).

(d) Defendants DONNELL YOUNG and JAMAL SHAKIR intentionally engaged in conduct which each of them knew would create a grave risk of death to a person, other than one of the participants in the offense, and which resulted in the death of the victim. 21 U.S.C. §848(n)(1)(D).

(e) Defendant JAMAL SHAKIR has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person. 21 U.S.C. §848(n)(3).

(f) Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value. 21 U.S.C. §848(n)(6).

(g) Defendants DONNELL YOUNG and JAMAL SHAKIR committed the offense in the expectation of the receipt of anything of pecuniary value. 21 U.S.C. §848(n)(7).

70

(h) Defendants DONNELL YOUNG and JAMAL SHAKIR committed the offense after substantial planning and premeditation. 21 U.S.C. §848(n)(8).

(i) The violation of subchapter I of Title 21, United States Code, in relation to which defendants JAMAL SHAKIR and DONNELL YOUNG committed the conduct described in 21 U.S.C. §848(e) was a violation of 21 U.S.C. §859. 21 U.S.C. §848(n)(11), as set forth in footnote 1.

(j) Defendant DONNELL YOUNG committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim. 21 U.S.C. §848(n)(12).

14. As to Count Thirty-eight:

(a) Defendant DONNELL YOUNG intentionally killed the victim. 18 U.S.C. §3591(a)(2)(A).

(b) Defendant DONNELL YOUNG intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B).

(c) Defendants JAMAL SHAKIR and DONNELL YOUNG intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. 18 U.S.C. §3591(a)(2)(C).

71

(d)   Defendant DONNELL YOUNG  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.   18 U.S.C. §3591(a)(2)(D).

(e)   Defendant JAMAL SHAKIR has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm (as defined in 18 U.S.C. §921) against another person.   18 U.S.C. §3592(c)(2).

(f)   Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.   18 U.S.C. §3592(c)(4).

(g)   Defendant DONNELL YOUNG committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.   18 U.S.C. § 3592(c)(6).

(h)   Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.   18 U.S.C. §3592(c)(7).

72

(i)   Defendants JAMAL SHAKIR and DONNELL YOUNG committed the offense in the expectation of the receipt of anything of pecuniary value.  18 U.S.C. §3592(c)(8).

(j)   Defendants JAMAL SHAKIR and DONNELL YOUNG committed the offense after substantial-planning and premeditation to cause the death of a person.  18 U.S.C. §3592(c)(9).

(k)   Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859.  18 U.S.C. §3592(c)(13).

15.   As to Count Thirty-nine:

(a) Defendant DONNELL YOUNG intentionally killed the victim.  18 U.S.C. §3591(a)(2)(A).

(b)   Defendant DONNELL YOUNG intentionally inflicted serious bodily injury that resulted in the death of the victim. 18 U.S.C. §3591(a)(2)(B).

(c)   Defendants JAMAL SHAKIR and DONNELL YOUNG intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.  18 U.S.C. §3591(a)(2)(C).

73

(d)   Defendant DONNELL YOUNG  intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.  18 U.S.C. §3591(a)(2)(D).

(e)   Defendant JAMAL SHAKIR has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.  18 U.S.C. §3592(c)(4).

(f)   Defendant DONNELL YOUNG committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.  18 U.S.C. § 3592(c)(6).

(g)   Defendant JAMAL SHAKIR procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.  18 U.S.C. §3592(c)(7).

(h)   Defendants JAMAL SHAKIR and DONNELL YOUNG committed the offense in the expectation of the receipt of anything of pecuniary value.  18 U.S.C. §3592(c)(8).

(i)   Defendants JAMAL SHAKIR and DONNELL YOUNG committed the offense after substantial planning and

74

premeditation to cause the death of a person.  18 U.S.C. §3592(c)(9).

   (j) Defendant JAMAL SHAKIR committed the offense in the course of engaging in a continuing criminal enterprise in violation of 21 U.S.C. §848(c) and that violation involved the distribution of drugs to persons under the age of 21 in violation of 21 U.S.C. §859.  18 U.S.C. §3592(c)(13).


          A TRUE BILL:


JAMES K. VINES
UNITED STATES ATTORNEY


75